IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ALEJANDRO L. NORITA,<br><br>                  Plaintiff,<br>    v.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; REGINO CELIS, in his personal capacity; JEROME REYES, in his personal capacity; and DOES 1–10;<br><br>                  Defendants. | Case No. 1:12-CV-00010<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART CELIS AND REYES' MOTION TO DISMISS, (2) GRANTING IN PART AND DENYING IN PART THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS' MOTION TO DISMISS, AND (3) ACKNOWLEDGING THE NOTICE OF SUBSTITUTION** |

This dispute regards Plaintiff Alejandro Norita's ("Norita") claims arising out of an incident involving Defendants Regino Celis ("Celis") and Jerome Reyes ("Reyes"), who are both police officers employed by the Commonwealth of the Northern Mariana Islands ("Commonwealth") Department of Public Safety. Before the Court are Celis and Reyes' motion to dismiss (ECF Nos. 3–4 (hereinafter "Celis & Reyes Motion")), the Commonwealth's motion to dismiss (ECF No. 6-1 (hereinafter "Commonwealth Motion")), and the Commonwealth's notice of substitution (ECF Nos. 7–8 (hereinafter "Commonwealth Notice")).

The Court has considered the written and oral arguments of the parties. The Court GRANTS in part and DENIES in part Celis and Reyes' motion to dismiss, GRANTS in part and DENIES in

1

part the Commonwealth's motion to dismiss, and ACKNOWLEDGES the Commonwealth's notice of substitution.

## I. FACTUAL BACKGROUND

Norita alleges the following facts in his complaint. Norita was driving a 1993 Toyota Corolla near Northern Marianas College when "a police car suddenly pursued him." (ECF No. 1 at ¶ 11 (hereinafter "Complaint").) He did not want to stop there because it was dark, preferring instead to stop at his residence. (*Id.*) Norita "continually signaled" the police officer to follow him by pointing forward. (*Id.*) As he and the police neared his residence, Norita noticed a directly oncoming car and swerved to avoid the collision, causing him to slip and crash his car. (*Id.* at ¶ 12.)

After crashing, the police officers—Reyes and Celis—approached Norita's vehicle, Reyes with his handgun drawn. (*Id.* at ¶ 14.) One shouted at Norita: "Now you are going to die." (*Id.* at ¶ 15.) The officers then "forcefully extracted and dragged Mr. Norita from his car." (*Id.* at ¶ 16.) At this time, Reyes and Celis "did not know the extent of Mr. Norita's injuries . . . ." (*Id.* at ¶ 18.) After removing Norita from his car, one officer forcefully threw him to the ground. (*Id.* at ¶ 16.) That officer then forcefully pressed his knee into Norita's back and handcuffed him, and he continued to hold Norita in that position for some time thereafter. (*Id.* at ¶¶ 16, 19.) As a proximate result of this force, Norita is now paralyzed from the neck down. (*Id.* at ¶ 19.)

The complaint pleads eight causes of action. Six are relevant to the motions before the Court: assault and battery against Reyes and Celis (first cause of action); emotional distress against Reyes and Celis (second cause of action); 42 U.S.C. §§ 1983 and 1988 claims for violating Norita's civil rights under the United States Constitution against Reyes and Celis (third cause of action); violation of civil rights under the Commonwealth Constitution against Reyes and Celis (fourth cause

of action); violation of civil rights under the Commonwealth Constitution against the Commonwealth and Doe Defendants (fifth cause of action); and negligence against Reyes, Celis, the Commonwealth, and Doe Defendants (sixth cause of action).  (*Id.* at ¶¶ 28–80.)

Following the filing of the complaint but prior to filing the motion to dismiss, Celis filed an answer.  (*See* ECF No. 2 (hereinafter "Answer").)

## II.   JURISDICTION

This Court has subject matter jurisdiction over the Section 1983 and 1988 claims pursuant to 28 U.S.C. §§ 1331 and 1343 (federal question and civil rights jurisdiction, respectively) and over all other claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

## III.   STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must assume "that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). Further, it "must construe the complaint in the light most favorable to the plaintiff . . . ." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).  The complaint's "allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56.  "To survive a motion to dismiss," these allegations must make the complaint's "claim to relief . . . plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

///

//

/

3

## IV. DISCUSSION

### A. CELIS AND REYES' MOTION TO DISMISS

Celis and Reyes have filed a motion to dismiss three of Norita's claims: the civil rights claim under the United States Constitution (third cause of action), the civil rights claim under the Commonwealth Constitution (fourth cause of action), and the negligence claim (sixth cause of action) with respect to Celis and Reyes only. (ECF No. 3.) Norita concedes that dismissal is proper for the latter two causes of action. (ECF No. 10 at 14–15 (hereinafter "Opposition").)

Celis and Reyes argue that the civil rights claim under the United States Constitution should be dismissed because they have qualified immunity. Possessing such immunity would bar the cause of action and require dismissal. Before reaching the immunity issue, the Court first addresses two procedural issues: the effect Celis' prior answer has on the standard of review and whether the Court can examine documents external to the complaint.

The Court concludes that Celis' prior answer does not change the standard of review for his motion to dismiss and that the Court cannot consider the Government's proffered documents. Thus, taking the complaint as true and construing it in the light most favorable to Norita, the complaint demonstrates a plausible claim that Reyes and Celis do not have qualified immunity. Accordingly, dismissal is not proper.

#### 1. Celis' Answer

A Rule 12 motion to dismiss "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Here, Celis filed an answer prior to filing a 12(b)(6) motion to dismiss. (*Compare* Answer *with* Celis & Reyes Motion to Dismiss.) In such situations, the Ninth Circuit treats the 12(b)(6) motion to dismiss "as a motion for judgment on the pleadings, pursuant to

Rule 12(c) or 12(h)(2)." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004). A motion for judgment on the pleadings requires "appl[ying] the same standards applicable to a Rule 12(b)(6) motion." William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 9:319; *see also Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule."). That is, a court must accept as the true the allegations in the nonmovant's pleadings and treat as false all contradictory allegations in the movant's pleadings. *See Elvig*, 375 F.3d at 955.

One key difference between a motion to dismiss and a motion for judgment on the pleadings is that the former examines the complaint, but the latter examines the pleadings. Pleadings include, among other things, the complaint and answer. Fed. R. Civ. P. 7(a). They also include a document attached as "an exhibit to a pleading . . . ." Fed. R. Civ. P. 10(c). But pleadings do not include a document attached as an exhibit to a motion. *See* Fed. R. Civ. P. 7(a), 10(c). Such are the Government's proffered documents. (*See* ECF No. 3, Exhibits 1–4.)

Because the same standard applies to Celis' motion for judgment on the pleadings and Reyes' motion to dismiss, and because the nonmovant's pleadings comprise only the complaint, the analysis for Celis and Reyes' motions are the same. For simplicity, the Court analyzes Celis and Reyes' motions together, treating the former's motion as if it were a motion to dismiss.

**2. External Documents**

Reyes and Celis contend that the Court, in ruling on the motion to dismiss, should consider the investigation report, police report, and supplemental report attached as exhibits to the motion. (Motion at 3–5.) They first argue that the Court can consider these reports because the complaint

5

1 incorporates them by reference (*id.*), and they later add that the Court can take judicial notice of
2 these reports because they are public records (ECF No. 13 at 2 (hereinafter "Reply")).

3     "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited
4 to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). However, a
5 court may consider external evidence if a complaint incorporates that external document by
6 reference or if the court takes judicial notice of that document. *United States v. Ritchie*, 342 F.3d
7 903, 908–09 (9th Cir. 2003). A document is incorporated by reference if: "(1) [T]he complaint
8 refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions
9 the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448. A document
10 is central to a plaintiff's claim where the claim's allegations are based on that document's contents.
11 *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute*
12 *on other grounds*. Such centrality is present when, for example, "a plaintiff's claim about insurance
13 coverage is based on the contents of a coverage plan or when a plaintiff's claim about stock fraud is
14 based on the contents of SEC filings." *Ritchie*, 342 F.3d at 908 (citations omitted). Generally, a
15 document is not incorporated by reference where the complaint merely mentions that document, as
16 opposed to "refer[ring] extensively" to it. *Id.*

17     The complaint did not incorporate the reports by reference because they are not central to
18 Norita's claims. His claims are based on Reyes and Celis' conduct, not later reports on their
19 conduct. This differs from an insurance coverage claim, where a plaintiff's claim of coverage
20 depends on the document itself. Additionally, the complaint references these documents only once,
21 and only to acknowledge their possible existence. (*See* Complaint at ¶ 21 (stating that Norita has
22 "lodged a complaint at [the Department of Public Safety]" and that the department has not "released
23 . . . the results of the investigation").) Finally, Reyes and Celis' discussion of *Branch v. Tunnel*, 14
24

6

1  F.3d 449 (9th Cir. 1994) (Celis & Reyes Motion at 5), is unpersuasive.  There, the court required

2  only that the complaint refer to the document and that its authenticity is not in question.  *Branch*, 14

3  F.3d at 453–54.  But that case was decided in 1994, prior to the Ninth Circuit's requiring the

4  document to also be central to a plaintiff's claim.  *See Marder*, 450 F.3d at 448.

5       A court may also consider external evidence if taking judicial notice of it is proper.

6  A "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is

7  generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily

8  determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b);

9  *Ritchie*, 342 F.3d at 909.  Taking judicial notice is proper with "some public records, including the

10  'records and reports of administrative bodies.' "  *Ritchie*, 342 F.3d at 908.

11       But judicial notice is not proper for all public records; only where the record cannot be

12  reasonably questioned is it proper.  *See* Fed. R. Evid. 201(b).  Public records amenable to judicial

13  notice include "prior court proceedings, administrative materials, city ordinances, official maps, or

14  other court documents."  *See Del Puerto Water Dist. v. United States Bureau of Reclamation*, 271 F.

15  Supp. 2d 1224, 1232–33 (E.D. Cal. 2003) (citations omitted) (citing Ninth Circuit cases taking

16  judicial notice of these public records).  Contrastingly, factual findings in a law enforcement

17  agency's report may be more susceptible to being reasonably questioned and, thus, are not eligible

18  for judicial notice.  *See Ritchie*, 342 F.3d at 909.  Moreover, even if such a report is "properly the

19  subject of judicial notice," a court should "give[] some opportunity to respond to the propriety of

20  taking judicial notice of the facts alleged therein."  *Id.* at 909; *see also* Fed. R. Evid. 201(e).

21       The Government's proffered reports provide self-serving factual findings that do not rise to

22  the accuracy level of, say, an official map.  And because the Government first raised this argument

23  in its reply brief, Norita did not have an opportunity to respond.  Accordingly, judicial notice is not

24

7

proper, and the Court does not consider the Government's proffered documents in deciding this motion.

### 3. Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions . . . [from] civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "is an immunity from suit . . . and is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis removed). Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks omitted). This includes resolving "insubstantial claims . . . prior to discovery." *Id.* at 231 (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 684–86.

This preference for resolving disputes early does not change the standard of review on a motion to dismiss. When considering a question of qualified of immunity at this stage, a court must accept the complaint's factual allegations as true. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2079 (2011). To survive a motion to dismiss on qualified immunity grounds, a plaintiff must plausibly "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* at 2080. The latter showing "turns on the 'objective legal reasonableness' of the action" and whether "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Inouye v. Kemna*, 504 F.3d 705, 712 n.6 (9th Cir. 1997) (explaining that this

8

reasonableness inquiry is part of the second showing). This reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Before applying this test, a court must define the alleged right more particularly than the constitutional provision itself, but it need not incorporate all the factual circumstances in the alleged right. *See, e.g.*, *Watkins v. City of Oakland*, 145 F.3d 1087, 1092–93 (9th Cir. 1998) (defining the right as freedom from excessive force is likely insufficient, but defining it as freedom from excessive force effected by a specific police policy is sufficiently particular); *see also Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995) (defining the right as an Eighth Amendment right generally is likely insufficient, but defining it as an "Eighth Amendment in the prison medical context" is sufficiently particular (emphasis removed)).

The complaint alleges two violations of Norita's civil rights under the United States Constitution: the right to be free from unreasonable searches and seizures and the right to be free from excessive force. (Complaint at ¶¶ 42–43.) The Court analyzes each in turn.

### a. Unreasonable Search and Seizure

The Fourth Amendment guarantees a motorist's right to be free from an investigatory stop absent "reasonable suspicion" of criminal activity. *E.g.*, *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). This right is clearly established and is sufficiently particular for qualified immunity analysis. *See, e.g.*, *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011).

The complaint alleges a plausible claim that Defendants Reyes and Celis violated this right by "suddenly pursu[ing]" Norita. (*See* Complaint at ¶ 11.) The complaint does not provide a reason for this pursuit, and on a motion to dismiss, the Court must assume they lacked reasonable suspicion.

9

Without such suspicion, a reasonable officer would understand that stopping Norita would violate Norita's constitutional rights. *See, e.g.*, *Liberal*, 632 F.3d at 1077–78.

The fact that Norita did not immediately stop does not change this analysis. Without reasonable suspicion, a person has the right "to ignore the police and go about his business. . . . And any 'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). However, if a person flees from the police, he is not going about his business, and such headlong flight provides reasonable suspicion of criminal activity. *Id.* at 124–25. Thus, when a police officer lacks reasonable suspicion to stop a motorist, a motorist's noncooperation by continuously driving, so long as he does not engage in headlong flight from the police, does not provide reasonable suspicion of criminal activity. *Liberal*, 632 F.3d at 1078.

The complaint does not indicate that Norita engaged in headlong flight. (*See* Complaint at ¶¶ 11–12 (not discussing Norita's speed or driving maneuvers)). It does indicate that, instead of fleeing or refusing to cooperate, Norita somewhat cooperated with the officers by "continually signal[ing]" them to follow him. (*See* Complaint at ¶ 11.) The only fact suggesting that Norita did engage in headlong flight is that he may have been driving for a not insubstantial distance, because Reyes and Celis began pursuing him at Northern Marianas College, and the accident occurred "almost near his residence" in San Jose. (Complaint at ¶¶ 11–12.) But "almost near his residence" is vague, and construing this in the light most favorable to Norita, this unknown distance travelled—when combined with Norita's cooperation—is plausibly insufficient to amount to headlong flight.

Reyes and Celis argue that they did have reasonable suspicion of criminal activity—that Norita was driving without his headlights on and led them on a high speed chase—but their support comes from police and investigatory reports, not the complaint. (*See* Celis & Reyes Motion at 10.)

They also argue that the severity of Norita's injuries suggests he was speeding or driving without his seatbelt. (Reply at 3–4.) This may be true, but it does not construe the complaint in the light most favorable to Norita. It is plausible that Norita, in his 1993 Toyota Corolla, could sustain such injuries even when obeying all traffic laws.

### b. Excessive Force

The Fourth Amendment guarantees a person's right to be free from excessive force during an investigatory stop. *Graham*, 490 U.S. at 395. To determine whether the force used was excessive, a court must "balance[] the 'nature and quality of the intrusion' on a person's liberty with the 'countervailing governmental interests at stake' to determine whether the use of force was objectively reasonable under the circumstances." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (quoting *Graham*, 490 U.S. at 396). Where police do not have reasonable suspicion of criminal activity and the person is not fleeing from the police, it is clearly established that the quantum of force required for excessive force is minimal. *See Liberal*, 632 F.3d at 1069, 1079; *see also Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (stating that "the government interests at stake include '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight' " (quoting *Graham*, 490 U.S. at 396)).

In *Liberal v. Estrada*, the Ninth Circuit determined that the officers-defendants were not entitled to qualified immunity for an excessive force claim. *Liberal*, 632 F.3d at 1079. There, one officer attempted to stop the motorist-plaintiff without possessing reasonable suspicion of criminal activity. *Id.* at 1068, 1078–79. The motorist did not immediately stop for the officer, instead driving a couple blocks and parking in an unlit parking lot. *Id.* at 1068, 1078. This conduct did not amount to headlong flight. *Id.* at 1078.

11

1     One officer approached the motorist's "car with his hand on his gun." *Id.* at 1068. The

2 motorist complied with the officer's "requests for his driver's license and registration." *Id.* at 1079.

3 Despite there being no evidence that that the motorist was armed, one officer ordered the motorist to

4 get out of his car, and as he "began to step out[,] . . . an officer grabbed him by the wrist, pulled him

5 out of the car, spun him around, and pushed him against the rear door of the car." *Id.* at 1069, 1079.

6 This push had "enough force to rock the car, but the impact did not 'knock [the motorist's] breath

7 away.' " *Id.* at 1069. On these facts, this minimal quantum of force was both sufficient for an

8 excessive force claim and a clear violation of constitutional rights. *Id.* at 1079.

9     This case's facts track *Liberal*'s in all material respects. Like the officers in *Liberal*, Reyes

10 and Celis did not have reasonable suspicion that Norita committed a crime. Worse than *Liberal*,

11 Reyes approached the car with his handgun drawn. (Complaint at ¶ 14.) Upon reaching the car,

12 Reyes or Celis shouted, "Now you are going to die." (*Id.* at ¶ 15.) One of the officers then

13 "dragged" Norita from the car and "threw him to the ground with great force . . . ." (*Id.* at ¶ 16.)

14 Because these facts are materially identical to *Liberal*'s, Norita has plausibly pled that Reyes and

15 Celis do not possess qualified immunity for violating Norita's right to be free from excessive force.

16     Reyes and Celis contend that the Court should look to the case of *Johnson v. County of Los*

17 *Angeles*, 340 F.3d 787 (9th Cir. 2003), for guidance. (*See* Celis & Reyes Motion at 10–12, 14.)

18 That case involved similar aspects as the case before the Court: The police pursued the passenger-

19 plaintiff's car, and the officer-defendant forcibly pulled the passenger from the car where it was not

20 reasonably apparent that the passenger had suffered a debilitating back injury. *Johnson*, 340 F.3d at

21 793.

22     But despite these superficial similarities, *Johnson* differs materially from the facts here. The

23 officer in *Johnson* not only had reasonable suspicion that the passenger committed a crime, he knew

24

12

that the passenger and driver had just committed armed robbery. *Id.* at 788, 792. The passenger was in headlong flight from the officer, as he and the driver led the police on an hour-long car chase with speeds reaching nearly one hundred miles per hour. *Id.* When the car crashed, the officer pulled the passenger from the car out of concern that the passenger may use a weapon, as he had already committed armed robbery and was now "moving his hands around while hidden from view under a cover." *Id.* at 789, 792. These material differences from the case at bar render *Johnson* unpersuasive.

Reyes and Celis similarly point to the Ninth Circuit case *Blanford v. Sacramento County*, 406 F.3d 1110 (9th Cir. 2005). (Reply at 4–6.) This case, too, materially differs. The plaintiff there was carrying a sword through a residential neighborhood and repeatedly ignored officer-defendant's requests to drop the sword. *Blanford*, 406 F.3d at 1112. Further, it reasonably appeared that he was trying to break into a house. *Id.* at 1113, 1119.

### B. COMMONWEALTH'S MOTION TO DISMISS

The Commonwealth moves to dismiss the fifth and sixth causes of action with respect to the Commonwealth for failure to state a claim. (*See generally* Commonwealth Motion.) Norita concedes that dismissal is proper. (ECF No. 11.) Accordingly, the Court dismisses the fifth and sixth causes of action with respect to the Commonwealth.

### C. COMMONWEALTH'S NOTICE OF SUBSTITUTION

The Commonwealth has properly filed notice of substituting itself for Celis and Reyes on the first and second causes of action. (*See* Commonwealth Notice; *see also* ECF Nos. 18–19.) Norita argues that substitution is improper and that the Court should first prohibit the substitution and then hold an evidentiary hearing to determine whether substitution is improper. (ECF No. 12 at 5.)

A notice of substitution is automatically effective, and a court must issue "an order dismissing the employee from suit . . . ." *See* 7 CMC § 2210(a); *Kabir v. Commonwealth of the N. Mariana Islands*, 2009 MP 19 at ¶ 28 ("Once certification is given, the claim 'shall be deemed an action against the Commonwealth.' "). Despite its automatic effect, a court possesses the power to review the substitution. *Kabir*, 2009 MP 19 at ¶ 31. But to exercise this power, the party seeking review must first present evidence indicating that substitution is improper. *See Green v. Hall*, 8 F.3d 69, 85 (9th Cir. 1993) (stating that the following is the proper procedure for judicial review of a notice of substitution under federal law: "[T]he party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence"); *see also Kabir*, 2009 MP 19 at ¶ 31 n.19 (suggesting that the following is procedurally proper in the Commonwealth: "The party seeking review of the certification bears initial burden of proof and must present evidence sufficient to disprove certification by a preponderance of the evidence"). This Norita has not done. He attaches no evidence to his opposition and cites only his complaint. (*See generally* ECF No. 12.)

Accordingly, the substitution is effective, and Norita has not satisfied his burden of proving that the substitution is improper. The Commonwealth is substituted for Celis and Reyes in the first and second causes of action, and Celis and Reyes are dismissed from those two causes of action. The Court reserves its power to exercise judicial review of this substitution at a future date, if Norita files a motion with supporting evidence.

///

//

/

## V. CONCLUSION

The Court GRANTS in part and DENIES in part Celis and Reyes' motion to dismiss. It dismisses the fourth cause of action in entirety and the sixth cause of action as to Celis and Reyes only. The Court does not dismiss the third cause of action.

The Court GRANTS in part and DENIES in part the Commonwealth's motion to dismiss. It dismisses the fifth and sixth causes of action with respect to the Commonwealth. Remaining as the only defendants in these two causes of action are Doe Defendants.

The Court ACKNOWLEDGES the Commonwealth's notice of substitution. The Commonwealth is substituted for Celis and Reyes on the first and second causes of action, and Celis and Reyes are dismissed from those two causes of action.

Norita seeks leave to amend the fifth and sixth causes of action. (Opposition at 13–14; ECF No. 11 at 1–2.) The Government, Reyes, and Celis prefer dismissal with prejudice. (Reply at 8; Commonwealth Motion at 11.) Because the Ninth Circuit has a "generous standard for granting leave to amend from a dismissal for failure to state a claim," *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir. 2012), the Court GRANTS Norita's request for leave to amend the fifth and sixth causes of action.

SO ORDERED this 29th day of January, 2013.

RAMONA V. MANGLONA
Chief Judge